# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**NORDSTAR AIRLINES,**

    Plaintiff,

vs.                                   No. CIV 06-0998 RB/KBM

**JEFF ABBOTT d/b/a**
A7B/P´9"IT®-28..3124Y ½3½ìED Tj "E   12.32OF‰ A(NoAEXÂj   CP9898 s.ª   N‡24 TD (A7ICYEFM)b

Nordstar and Abbott agreed that Abbott would complete the overhaul services within ninety days and all services would be performed in a good and workmanlike manner. (Compl. ¶ 11.) The original target date for completion of the work was March 2002. (Compl. ¶ 12.)

Nordstar delivered the engine to Abbott on November 12, 2001, and paid the $10,000.00 deposit in February 2002. (Compl. ¶ 13.) Abbott failed to complete the overhaul services, failed to return the engine, and failed to refund the deposit. (Compl. ¶ 14.) The value of the core engine, prior to any repairs, was $10,000.00 . (Compl. ¶ 15.) Nordstar incurred over $100,000.00 in airplane rental costs due to the absence of the engine at issue. (Compl. ¶ 18.)

Abbott stated in an affidavit that the transaction was initiated by Nordstar in November 2001, when an agent of Nordstar delivered the engine and three engine cylinders to Abbott's place of business in Okmulgee, Oklahoma. (Abbott Aff. ¶ 7.) On November 13, 2001, Abbott's agent faxed a letter to Nordstar requesting instructions with regard to the engine and cylinders. (Abbott Aff. ¶ 8.) From November 13, 2001 through the present, Abbott communicated with Nordstar via telephone, fax and U.S. mail. (Abbott Aff. ¶ 10.)

Abbott performed all work concerning the transaction in Oklahoma. (Abbott Aff. ¶ 12.) Any documents signed by Abbott were signed in Oklahoma. (Abbott Aff. ¶ 11.) Neither Abbott nor his agents traveled to New Mexico in relation to the transaction. (Abbott Aff. ¶ 13.) Abbott has no office, place of business, or employee in New Mexico. (*Id.*) Abbott has never advertised in a New Mexico publication. (Abbott Aff. ¶ 15.) Abbott had two prior transactions with Nordstar; one on August 18, 2000, and one on September 11, 2000. (Abbott Aff. ¶ 17.) In both prior transactions, Nordstar shipped airplane cylinders to Abbott in Oklahoma; Abbott repaired the engines and shipped them back to Nordstar in New Mexico. (*Id.*)

Abbott moved to dismiss based on lack of personal jurisdiction and improper venue, or for a change of venue. On January 4, 2007, Nordstar filed a Response to the Notice of Removal, arguing that a substantial portion of the events or omissions giving rise to the claim occurred in New Mexico.

## II.     Standard.

"[W]hen the court's jurisdiction is contested, the plaintiff has the burden of proving jurisdiction exists." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir.2004) (*quoting Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir.1995)). Where the evidence presented on the motion to dismiss consists of affidavits and other written materials, the plaintiff need only make a prima facie showing and the district court must resolve all factual disputes in favor of the plaintiff. *Bell Helicopter Textron, Inc. v. Heliqwest Intern., Ltd.*, 385 F.3d 1291, 1296 (10th Cir.2004). The plaintiff bears the burden of establishing personal jurisdiction over defendant by a preponderance of the evidence. *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1276 (10th Cir.2005).

## III.    Discussion.

### A.     The Court Lacks Personal Jurisdiction Over Abbott.

Abbott contends that the Court lacks personal jurisdiction because he does not have minimum contacts with New Mexico sufficient to permit the exercise of personal jurisdiction over him. "To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Pro Axess*, 428 F.3d at 1276.

New Mexico's long arm statute, N.M. Stat. Ann. § 38-1-16, requires a pled cause of action to arise out of the same activity by which the foreign defendant submitted to New Mexico's personal jurisdiction. *See CABA, Ltd. Liab. Co. v. Mustang Software, Inc.*, 127 N.M. 556, 560-61, 984 P.2d

803, 807-808 (Ct. App.1999). It is coextensive with constitutional limitations imposed by the Due Process Clause. *Tercero v. Roman Catholic Diocese of Norwich, Conn.*, 132 N.M. 312, 48 P.3d 50, 54-55 (2002).

The Due Process Clause permits the exercise of jurisdiction over a nonresident defendant "'so long as there exists minimum contacts between the defendant and the forum State.'" *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir.2006) (quoting *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir.2000) and *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). The "minimum contacts" standard may be met in two ways. *Benton*, 375 F.3d at 1075. Specific personal jurisdiction exists "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotations omitted)). Alternatively, general personal jurisdiction may arise if the defendant has continuous and systematic contacts with the forum state. *Benton*, 375 F.3d at 1075 (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415 (1984)).

The analysis of whether a court's exercise of specific personal jurisdiction comports with the Due Process Clause entails a two-step inquiry. *See Benton,* 375 F.3d at 1075. The first question is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id*. Second, if the defendant's actions create sufficient minimum contacts, the Court must then consider "whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir.1998) (quotations omitted).

Nordstar states that the court has specific personal jurisdiction over Abbott because the "suit arose out of various conversations and agreements between the parties commencing on or about November 2001." (Nordstar's Resp. at 2.) Nordstar does not elaborate on this statement.

A showing of minimum contacts cannot rest on Nordstar's unilateral acts in seeking to do business with Abbott. *Burger King*, 471 U.S. at 478. The mere fact that Abbott engaged in communication with Nordstar, while Nordstar was in New Mexico, does not constitute sufficient minimum contacts with New Mexico to support personal jurisdiction. *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1298-99 (10th Cir.1999); *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir.1995).

It is well-established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts. *Far West Capital, Inc.*, 46 F.3d at 1077; *see also Soma*, 196 F.3d at 1298-99 (holding that a British bank's actions in sending faxes, written communications, and wire transfers to a corporation located in Utah were insufficient to establish specific personal jurisdiction over the bank in Utah where the corporation made a unilateral decision to conduct business with the British bank and Utah had only a fortuitous role in the parties' relationship). Instead, "the exercise of jurisdiction depends on the nature of those contacts" and "whether they represent an effort by the defendant to purposefully avail itself of the privilege of conducting activities within the forum state." *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1418-19 (10th Cir.1988).

The suit did not arise out of Abbott's activities in the state. Abbott neither lives nor works in New Mexico. Abbott never entered New Mexico with respect to the transaction, and never met with or conducted negotiations with Nordstar in New Mexico. None of the claims arise from Abbott's activities within or contacts with New Mexico. Nordstar makes no allegation that Abbott

purposefully chose New Mexico as the forum for any of his contacts with Nordstar. Abbott has no continuous or systematic contacts within New Mexico so as to support general jurisdiction. *See Trujillo*, 465 F.3d at 1218 n.7. Abbott's conduct and connection with New Mexico are insufficient to constitute minimum contacts.

If minimum contacts existed, the Court would consider whether the assertion of personal jurisdiction over Abbott would offend "traditional conceptions of fair play and substantial justice." *Trujillo*, 465 F.3d at 1222 (quoting *Burger King*, 471 U.S. 464). The relevant factors for this determination are:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

*Trujillo*, 465 F.3d at 1221 (quoting *Pro Axess,* 428 F.3d at 1279-80 (quotations omitted). "[T]he weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Pro Axess*, 428 F.3d at 1280. Because Nordstar made no showing on minimum contacts, nothing more than a deferential review of the *ProAxess* factors is necessary.

While not dispositive, the burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction. *OMI Holdings*, 149 F.3d at 1096. The primary factor weighs heavily in favor of Abbott. With respect to the second factor, there is no indication that New Mexico's interest in resolving the dispute is any stronger than Oklahoma's interest. The third factor is not helpful to Nordstar in that Nordstar knew that Abbott

6

was based in Oklahoma when it initiated contact with Abbott.

The fourth factor examines whether the forum state is the most efficient place to litigate the dispute in light of the location of witnesses, the location of the wrong, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation. *Trujillo*, 465 F.3d at 1221-22. The witnesses are located in Oklahoma. The work was to be performed in Oklahoma. Although it is unclear as to what substantive law governs, there is no danger of piecemeal litigation because the entire matter may be litigated in an Oklahoma forum. The fifth factor is not relevant in that the exercise of personal jurisdiction in this case would not affect the substantive social policy interests of Oklahoma. Nordstar's bare-bones jurisdictional allegations having been clearly refuted by Abbott's affidavit, the record establishes that the alleged actions of Abbott did not create sufficient minimum contacts with New Mexico and that the exercise of personal jurisdiction over Abbott by a New Mexico Court would offend traditional notions of fair play and substantial justice. Thus, the Court lacks personal jurisdiction over Abbott.

### B.   Transfer of Venue to the Eastern District of Oklahoma.

Where the Court determines that it lacks personal jurisdiction, and the interests of justice require transfer rather than dismissal, "[t]he correct course . . . is to transfer the action . . . ." *Trujillo*, 465 F.3d at 1223 (quoting *Ross v. Colorado Outward Bound School, Inc.*, 822 F.2d 1524, 1527 (10th Cir. 1987). Indeed, Abbott moves, in the alternative, for a transfer to the "District of Oklahoma" in the interests of justice and for the convenience of the parties and witnesses pursuant to 28 U.S.C. §§ 1404(a) and 1406(a). A diversity action may be brought in a judicial district where any defendant resides. *See* 28 U.S.C. §1391(a)(1). Abbott resides in Okmulgee, Oklahoma, which is located in the Eastern District of Oklahoma. *See* http://www.oked.uscourts.gov/gi01.htm.

Therefore, this matter could have been brought in the United States District Court for the Eastern District of Oklahoma.

In the interest of justice, a court may sua sponte cure jurisdictional and venue defects by transferring a suit under the federal transfer statutes. *Trujillo*, 465 F.3d at 1222 (citing 28 U.S.C. §§ 1406(a) and 1631). Factors that support transfer include a finding that a new action would be time-barred, that claims are likely to have merit, and that the original action was filed in good faith. *Trujillo*, 465 F.3d at 1223 n. 16. A new action might be time-barred because the statute of limitations may have run on the claims. *See* Okla. Stat. tit. 12, § 95(2) and (3) (Oklahoma statute of limitations is three years for breach of an oral agreement and two years for fraud); *but see* N.M. Stat. Ann § 37-1-4 (New Mexico statute of limitations for such claims is four years). Although the record does not contain information concerning the merits of the claims, it appears that the action was filed in good faith. Abbott does not oppose a transfer of venue. Therefore, this matter will be transferred to the United States District Court for the Eastern District of Oklahoma.

**WHEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or Improper Venue or for Change of Venue (Doc. 5), filed on November 28, 2006, is **GRANTED.**

**IT IS FURTHER ORDERED** that the Clerk shall transfer this matter to the United States District Court for the Eastern District of Oklahoma.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**